UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FORTRESS SECURE SOLUTIONS, LLC, a Washington Limited Liability Company, | NO. 4:17-CV-5058-TOR |
| Plaintiff, | ORDER ON DEFENDANTS' MOTIONS TO DISMISS |
| v. | |
| ALARMSIM, LLC, et al., | |
| Defendants. | |

BEFORE THE COURT are Defendant AlarmSIM's Motion to Dismiss (ECF No. 17), Defendant Ricky Guthrie Jr.'s Motion to Dismiss (ECF No. 18), Defendant Eduardo Ramirez's Motion to Dismiss (ECF No. 19), and Defendant Ricky D. Guthrie Sr.'s Motion to Dismiss (ECF No. 20). These matters were submitted for consideration without oral argument. The Court has reviewed the record and files herein, and is fully informed. For the reasons discussed below, AlarmSIM's Motion to Dismiss (ECF No. 17) is **DENIED**, Guthrie Jr.'s Motion to

Dismiss (ECF No. 18) is **DENIED**, Ramirez's Motion to Dismiss (ECF No. 19) is **GRANTED**, and Guthrie Sr.'s Motion to Dismiss (ECF No. 20) is **GRANTED**.

## BACKGROUND

On April 28, 2017, Plaintiff filed a Complaint alleging false designation of origin, dilution, intentional and/or negligent misrepresentation, breach of agreement, violations of RCW 19.86 *et seq.*, and civil conspiracy. ECF No. 1 at ¶¶ 27–61. Plaintiff asserts that jurisdiction is proper because AlarmSIM does business in Washington, committed tortious acts in Washington, and has otherwise established sufficient contacts. *Id.* at ¶ 7. Plaintiff also states that venue is proper, in accordance with 28 U.S.C. § 1391(b)(1) and (2), because "a substantial part of the events or omissions giving rise to these claims occurred in this judicial district." *Id.* at ¶ 8.

On August 18, 2017, each Defendant filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). ECF Nos. 17; 18; 19; 20. Plaintiff filed a Motion for Leave to Conduct Jurisdictional Discovery (ECF No. 24), which the Court granted. ECF No. 29. Plaintiff later filed a Motion to Compel Discovery (ECF No. 30), and the Court denied this motion. ECF No. 42.

In the instant motions, Defendants seek dismissal for lack of personal jurisdiction and improper venue. ECF Nos. 17; 18; 19; 20.

//

## FACTS

The following are the undisputed facts unless otherwise noted. The Plaintiff Fortress Secure Solutions, LLC ("Fortress") is a Washington limited liability company that owns and operates a retail, internet-based home security alarm business. ECF Nos. 1 at ¶¶ 1, 10; 34 at 2. Defendant AlarmSIM, LLC ("AlarmSIM") is a North Carolina corporation that was a purveyor of products for sale on the Internet, but has since been administratively dissolved. ECF Nos. 17 at 2–3; 18-1 at ¶ 4. Defendants Rickie Guthrie Jr., Rickie Guthrie Sr., and Eduardo Ramirez were officers, members, and control persons of AlarmSIM. ECF No. 1 at ¶¶ 3–5. Guthrie Jr. was AlarmSIM's founder and managing member. ECF Nos. 17 at 2; 18-1 at ¶ 5. Guthrie Sr. and Ramirez were named officers on the incorporation paperwork, but Defendants claim these positions were nominal and included no responsibilities to AlarmSIM. ECF Nos. 17 at 2–3; 19-1 at ¶¶ 5–8; 20-1 at ¶¶ 5–8. AlarmSIM sold products throughout the United States and Canada. ECF Nos. 17 at 3; 17-1 at ¶¶ 32–33. While its products were sold and shipped to Washington, AlarmSIM asserts that it was neither the seller nor shipper of these products and it did not solicit business in Washington. ECF No. 17 at 3–4.

On November 11, 2013, Fortress claims that Guthrie Jr. contacted Fortress' President Michael Hofeditz regarding the compatibility of its SIM cards with

Fortress' security system.  ECF Nos. 34 at 2; 36 at ¶¶ 2, 8.[1]  Hofeditz explained to

Guthrie Jr. that Fortress was a Washington business and was concerned for its

customers in Washington and throughout the country.  ECF Nos. 34 at 2–3; 36 at ¶

8.  Hofeditz contends that Guthrie Jr. indicated AlarmSIM offered top notch

customer service and would take good care of Fortress' customers should it

recommend AlarmSIM SIM cards.  *Id.*  Guthrie Jr. then reached out by email on

November 12, 2013, offering Fortress a "partnership" where AlarmSIM would

supply Fortress with white label SIM cards which would be purchased and

reloaded on Fortress' website.  ECF Nos. 34 at 3; 36 at ¶ 9; 36-1 at 2–3 (Ex. A).[2]

Fortress did not elect to purchase the white label products, but agreed to

advertise and promote the SIM card to its customers to be used in conjunction with

---

[1]    Defendants argue that it is irrelevant whether Guthrie Jr. reached out to

Plaintiff to enter a business deal because Plaintiff declined the arrangement.  ECF

No. 44 at 7.  It is clear that a phone call did occur between the parties on this date.

*See* ECF No. 36-1 at 2 (Ex. A).

[2]    Defendants assert that this email is limited to the offered arrangement and

Plaintiff cannot decline the arrangement, then decide to rely on its representations

in a new arrangement it created on its own.  ECF No. 44 at 7.

Fortress security systems. ECF Nos. 34 at 3–4; 36 at ¶ 11. On January 30, 2014, Hofeditz personally purchased an AlarmSIM SIM card for his Fortress Security system. ECF Nos. 34 at 4; 36-1 at 6 (Ex. B).[3] In 2014 and 2015, Fortress claims it referred hundreds of customers to AlarmSIM, including over 100 residents of Washington. ECF Nos. 34 at 4; 36 at ¶ 14.

On December 14, 2015, AlarmSIM sent an email to all Fortress' customers who had purchased its SIM cards. ECF No. 34 at 4. This email told customers that that there was a serious risk to the proper functioning of their security systems and existing companies were slow or absent in their response. ECF No. 36-1 at 9 (Ex. C). AlarmSIM announced that it had decided to introduce its own, new 3G security panel. *Id.* AlarmSIM compared its panel to what is currently on the market as "what a computer is to a calculator." *Id.* Customers could click on a link at the bottom of the email to order the new panel. *Id.* Defendants emphasize that this email, claimed by Plaintiff as defamation, is not a cause of action under Plaintiff's Complaint. ECF No. 44 at 8.

In December 2015, AlarmSIM offered a live chat as part of its marketing campaign. ECF No. 34 at 5. Fortress contacted the live chat line, which stated that

---

[3]     Defendants assert that this SIM card is not the allegedly infringing product and so does not relate to Plaintiff's claims. ECF No. 44 at 8.

the system is "specifically designed to replace the Fortress systems." ECF No. 36-1 at 11 (Ex. D). Fortress claims that it received numerous communications from customers seeking assurance that Fortress' security systems were functional, causing Fortress to devote substantial staff resources to address these issues. ECF Nos. 34 at 5; 36 at ¶ 17. On December 23, 2015, AlarmSIM contacted Fortress asking for a list of which Fortress systems were 2G, 3G, or 4G. ECF No. 36-1 at 14 (Ex. E). AlarmSIM also requested a sample of Fortress' newer unit so that it could offer support to users of that device.[4] *Id.*

Fortress contends that AlarmSIM sent a copy of its December 14, 2015 email to at least 58 of Fortress' customers who resided in Washington. ECF Nos. 34 at 5; 36 at ¶ 19; 36-1 at 16–17 (Ex. F). Fortress also claims that it received numerous complaints from customers concerning the products and services provided by AlarmSIM, including AlarmSIM's customer service. ECF Nos. 34 at 6; 36 at ¶ 20. Fortress alleges that AlarmSIM's new security systems were merely copies of Fortress' existing design and trade dress. ECF No. 34 at 6–7.

//

//

---

[4] Defendants assert that Fortress did not state that it provided the sample and so AlarmSIM's intentions are of no consequence. ECF No. 44 at 8–9.

# DISCUSSION

## I.    Personal Jurisdiction

A motion to dismiss for lack of personal jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(2).  In opposing such a motion, the plaintiff bears the burden of establishing that jurisdiction is proper.  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  Where "the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss."  *Id.* (citation omitted).  To satisfy this standard, a plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (quotation and citation omitted).  Uncontroverted allegations in the complaint must be taken as true.  *Mavrix*, 647 F.3d at 1223 (citation omitted).  The court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," but factual disputes are resolved in the plaintiff's favor.  *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006); *Mavrix*, 647 F.3d at 1223.

Personal jurisdiction in federal courts is determined by the law of the state in which it sits.  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). Washington state law permits personal jurisdiction over nonresidents and foreign

corporations to the full extent allowed by the Due Process Clause of the United States Constitution. *Shute v. Carnival Cruise Lines*, 113 Wash.2d 763, 766-67 (1989). Under the Due Process Clause, a court may exercise personal jurisdiction over a defendant only where "the defendant [has] certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)) (internal quotation marks and brackets omitted).

Personal jurisdiction over a nonresident defendant may take one of two forms: general jurisdiction or specific jurisdiction. General jurisdiction requires connections with the forum "so continuous and systematic as to render the foreign corporation essentially at home in the forum State." *Ranza*, 793 F.3d at 1064 (citation omitted). Specific jurisdiction will lie "when a case arises out of or relates to the defendant's contacts with the forum." *Id.* at 1068 (quotation marks and citation omitted).

**A. General Jurisdiction**

Plaintiff merely states the standard for general jurisdiction, but focuses its argument on specific jurisdiction. ECF No. 34 at 15. General jurisdiction occurs "only when the corporation's affiliations with the State in which suit is brought are

so constant and pervasive 'as to render [it] essentially at home in the forum State."

*Daimler AG v. Bauman*, 134 S.Ct. 746, 751 (2014) (citing *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Here, the Court finds that

AlarmSIM is clearly not at home in Washington when it is a North Carolina

corporation. Plaintiff concedes that the Supreme Court established a high bar for

the quantity of contacts to arise to the level of continuous and systematic. ECF No.

34 at 15 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408,

416 (1984)). The Court finds that the 4% of AlarmSIM's sales made to

Washington residents is itself insufficient to meet this high bar.

Accordingly, the Court concludes that even if Plaintiff is alleging general

jurisdiction, this claim would fail.

**B. Specific Jurisdiction**

The Ninth Circuit uses the following three-part test when determining if

specific personal jurisdiction exists:

> (1) The non-resident defendant must purposefully direct his activities
> or consummate some transaction with the forum or resident thereof; or
> perform some act by which he purposefully avails himself of the
> privilege of conducting activities in the forum, thereby invoking the
> benefits and protections of its laws; (2) the claim must be one which
> arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and
> substantial justice, i.e. it must be reasonable.

*Mavrix*, 647 F.3d at 1227–28 (citation omitted) (emphasis in original). The plaintiff has the burden of proving the first two prongs. *Id.* at 1228 (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). Once established, the burden shifts to the defendant to set forth a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

### 1. Purposeful Availment or Direction

Plaintiff has asserted claims in both contract and tort. In contract cases, courts typically analyze jurisdiction under purposeful availment. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). In tort cases, courts look to whether a defendant purposefully directed his activities at the forum state. *Id.* The Court will therefore address both standards below.

### a. Purposeful availment

An interactive website can create purposeful availment under the *Zippo* test, which test was adopted by the Ninth Circuit. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997); *Mavrix*, 647 F.3d at 1226–27. Under the *Zippo* sliding scale analysis, the likelihood of personal jurisdiction is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo*, 952 F. Supp. at 1124. Jurisdiction is proper

where a defendant clearly does business over the Internet, such as when a defendant enters into a contract with residents of a foreign jurisdiction that "involve the knowing and repeated transmission of computer files over the Internet." *Id.* On the other end of the spectrum, a defendant who simply posts information on a website that is accessible to foreign jurisdictions does not create grounds for personal jurisdiction. *Id.* The court in *Zippo* found purposeful availment based on the defendant's interactive website and contracts with 3,000 individuals and seven Internet access providers in Pennsylvania, which allowed them to download electronic messages forming the basis of the suit. *Id.*; *see Cybersell*, 130 F.3d at 418.

Here, Defendants contend that its two websites were completely passive, "allowing no interactivity between Defendant and the users of the website." ECF Nos. 17 at 10; 17-1 at ¶¶ 16–21. Plaintiff argues that Defendants' website "falls on the far end of the 'interactive' side of the sliding scale, as they allow users to select and purchase products and have them shipped to the forum state." ECF No. 34 at 16–17. Plaintiff contends that AlarmSIM's website allowed Washington customers to directly purchase its products, constituting purposeful availment. *Id.* at 17. Plaintiff asserts that Defendants' sales are far from *de minimis*, as they have made at least 126 sales to Washington residents from June 2014 until March 2017, which constitute 4% of its total sales. *Id.* at 18. Plaintiff suggest that this 4% is

greater than Defendants' per state average.  *Id.* at 18 n. 20.  Plaintiff also alleges that AlarmSIM has only provided information through the ecommerce platform of JotForm, not any additional sales made through Amazon or PayPal.  *Id.* at 18.

Assuming the facts alleged by Plaintiff as true, it is likely that AlarmSIM's website is more interactive than passive.  A screenshot of AlarmSIM's website shows that it sells items on its website, which can be added to a cart.  ECF No. 35 at 24–25 (Ex. C).  AlarmSIM did not merely post information on a website that was accessible to Washington.  AlarmSIM's claims that third parties processed orders, collected money and shipped the product ignores that these third parties did so at AlarmSIM's direction and for AlarmSIM's benefit.

Additionally, AlarmSIM did business with a Washington company.  AlarmSIM allegedly had an agreement with Fortress where Fortress would recommend AlarmSIM SIM cards to its customers.  AlarmSIM then emailed these customers to sell them an allegedly infringing panel to replace the Fortress panel.  ECF No. 36-1 at 11 (Ex. D).  Accepting these facts as true, it is then clear that AlarmSIM's website falls closer to the interactive side of the spectrum.

Accordingly, the Court finds that AlarmSIM purposefully availed itself of Washington jurisdiction by entering into an agreement with Fortress, selling to Washington customers through its interactive website, and marketing to Fortress' Washington customers with an allegedly infringing security system.

### b. Purposefully directed activities

Even if AlarmSIM did not purposefully avail itself of Washington jurisdiction, the Court finds that AlarmSIM purposefully directed its activities at Washington. "In tort cases, we typically inquire whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Mavrix*, 647 F.3d at 1228 (citing *Yahoo! Inc.*, 433 F.3d at 1206). The *Calder* effects test[5] requires that the defendant must have allegedly "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (citations omitted).

The first factor of the *Calder* test is met, as AlarmSIM allegedly tortuously contacted Fortress' customers in an effort to sell them infringing security systems. ECF No. 34 at 19. Under the second *Calder* factor, Plaintiff contends that Defendants' intentional acts were expressly aimed at Washington State because Defendants knew the impact of their willful actions would be felt by Fortress in Washington. *Id.* at 21. The Ninth Circuit noted that a passive website in conjunction with "something more" directly targeting the forum is sufficient.

---

[5]     *Calder v. Jones*, 465 U.S. 783 (1984).

*Mavrix*, 647 F.3d at 1229 (citation omitted).  In determining "something more," the Ninth Circuit considered several factors, specifically the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant "individually targeted" a plaintiff known to be a forum resident.  *Id.* (citations omitted).

Under these factors and assuming the website is passive, Defendants argue that AlarmSIM's geographic scope was not aimed in Washington or the Northwest, but stretched across North America.  ECF Nos. 17 at 11; 17-1 at ¶¶ 32–33.  AlarmSIM also emphasizes that it in no way targeted Plaintiff or purposefully directed any conduct at Plaintiff or other Washington residents.  ECF No. 17 at 11–12.  Yet, assuming Plaintiff's facts as true, Guthrie Jr. called Fortress seeking a business partnership and knew that it was a Washington company.  By continuing a business relationship with Fortress and sending emails to Fortress customers in Washington, AlarmSIM individually targeted Fortress and the Washington jurisdiction.  The Court finds that AlarmSIM purposefully committed an intentional act aimed at the forum state.

Lastly, AlarmSIM would likely know that its allegedly tortious acts would cause harm in Washington.  "[A] corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business."  *Mavrix*, 647 F.3d at 1231 (citing *Dole Food Co., Inc. v. Watts*, 303 F.3d

1104, 1113 (9th Cir. 2002)). The economic loss caused by intentionally infringing and diluting the trade dress of Plaintiff's security system is foreseeable. It was also foreseeable that this economic loss would be inflicted in Fortress' principal place of business, Washington. ECF No. 1 at ¶ 1.

Accordingly, the Court finds that AlarmSIM purposefully directed its activities at Washington and the first element of specific jurisdiction is met.

## 2. Forum-Related Activities

Plaintiff's claim must arise out of or relate to defendant's forum-related activities. *See Mavrix*, 647 F.3d at 1227–28. Neither party can seriously dispute this second element. It is clear that Plaintiff's claims arise from Defendants' activity of allegedly infringing on a Washington corporation and marketing to Washington customers. Therefore, the Court finds that the second element is also met.

## 3. Reasonableness Considerations

Defendants bear the burden of setting forth a compelling case that the exercise of jurisdiction would not be reasonable. *Burger King*, 471 U.S. at 477. Relevant factors include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in

furthering fundamental substantive social policies." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*, 137 S.Ct. 1773, 1786 (2017) (citing *Burger King*, 471 U.S. at 477); *see also Asahi Metal Indus. Co. v. Superior Court of California, Salano Cty.*, 480 U.S. 102, 113 (1987).

Defendants contend that the burden of defending in Washington would be enormous or impossible for Defendants to bear. ECF Nos. 17 at 14; 18 at 10; 19 at 10; 20 at 11. Defendants emphasize that AlarmSIM is a non-functioning, dissolved corporation. ECF No. 17 at 12. The individual Defendants assert that they have never been to Washington, but defendants need not have "*physically enter[ed] the forum State*" for jurisdiction to attach. *Burger King*, 471 U.S. at 476 (emphasis in original). Guthrie Jr. states he is a handyman in North Carolina with no ties to Washington. ECF No. 18 at 8. Ramirez asserts that he is a cosmetologist in North Carolina with no ties to Washington and he argues that he only played a nominal role in the operations of AlarmSIM. ECF Nos. 19 at 8; 19-1 at ¶¶ 5–8. Similarly, Guthrie Sr. argues his position was only nominal and he never played a role in the company. ECF Nos. 20 at 3; 20-1 at ¶¶ 5– 8.

In regards to the individual defendants, Plaintiff states that the Defendants represented to the Federal Communications Commission that Guthrie Sr. was the "Chairman or other Senior Officer" and Ramirez was the "President or other Senior Officer." ECF Nos. 34 at 22; 35 at 32 (Ex. E). Guthrie Jr. admitted he was

the managing member and stated that he normally referred to himself as co-founder or owner. ECF Nos. 18-1 at ¶ 5; 34-1 at 25. AlarmSIM's website also stated that it was a family owned business with Guthrie Jr. as the co-founder. ECF NO. 35 at 35 (Ex. F). Plaintiff thus argues that Defendants had an active role in forming and operating the family business. ECF No. 34 at 22. Plaintiff also emphasizes that Guthrie Jr. testified that the initial percentage of membership ownership was Guthrie Sr. at 40% and Ramirez at 20%, and Defendants never changed the percentages. ECF No. 34-1 at 23. Guthrie Jr. also stated that the headquarters of AlarmSIM was listed as Guthrie Sr.'s residence. *Id.* at 26.

Under the North Carolina Limited Liability Company Act, a member of a North Carolina LLC is not necessarily liable for the obligations of the LLC. "A person who is an interest owner, manager, or other company official is not liable for the obligations of the LLC solely by reason of being an interest owner, manager, or other company official." N.C. GEN. STAT. § 57D-3-30. Plaintiff asserts that Ramirez and Guthrie Sr. personally made sales, but supply no facts for this assertion. ECF No. 34 at 23. While uncontroverted allegations in the Complaint must be taken as true, Defendants have supplied affidavits attesting that Ramirez and Guthrie Sr. were only nominal members who did not participate in the company. *See* ECF Nos. 19-1 at ¶¶ 5–8; 20-1 at ¶¶ 5–8; *Mavrix*, 647 F.3d at 1223; *Data Disc*, 557 F.2d at 1280; *Pebble Beach*, 453 F.3d at 1154. The Court

finds that Ramirez and Guthrie Sr.'s nominal participation in AlarmSIM where they likely could not be held liable under North Carolina's LLC Act is persuasive in showing that holding them subject to jurisdiction in Washington would be unreasonable. The Court determines that Defendants set forth a compelling case that the exercise of jurisdiction over Ramirez and Guthrie Sr. is unreasonable.

Additionally, Defendants state that North Carolina likely has as great an interest in the litigation as Washington. ECF No. 17 at 14. Yet, the Court does not find this argument compelling where the alleged wrongdoer is from North Carolina, but the alleged victims and others affected are a Washington corporation and Washington residents. Washington then has an interest in adjudicating this suit to protect its residents and corporation.

Defendants also express concern that every jurisdiction in which one of their products was sold could contend an interest equal to Washington. *Id.* Yet, jurisdiction is reasonable in Washington because AlarmSIM allegedly sought an agreement with a Washington corporation and allegedly infringed on a Washington trade dress. If Defendants infringed on a corporation's trade dress in every state then Defendants' concern would be justified, but merely the concern that AlarmSIM sold a product in every state is not a compelling reason to find jurisdiction here unreasonable. Defendants' argument that jurisdiction offends traditional notions of fair play because Defendants could never have predicted they

might be forced to defend themselves in Washington is also not compelling where

AlarmSIM allegedly sought out a Washington corporation and marketed to

Washington customers.

Accordingly, the Court finds that jurisdiction over AlarmSIM and Guthrie

Jr. is reasonable, as Defendants fail to show how jurisdiction in Washington would

be an enormous burden. AlarmSIM, by and through its owner and co-founder

Guthrie Jr., sought an agreement with a Washington corporation and marketed to

Washington residents, thereby purposefully availing and directing its activities at

Washington. Yet, holding Guthrie Sr. and Ramirez liable in Washington would be

unreasonable considering there are no facts revealing that they conducted any acts

in regards to AlarmSIM or the allegedly infringing conduct in Washington. The

Court grants dismissal of all claims against Guthrie Sr. and Ramirez for lack of

personal jurisdiction, but denies the dismissal in regards to AlarmSIM and Guthrie

Jr.

## II.    Venue

While Plaintiff fails to address Defendants' argument in their motions to

dismiss that venue is improper, Plaintiff correctly asserted venue in its Complaint.

ECF No. 1 at ¶ 8. Under 28 U.S.C. § 1391(b)(1), a civil action may be brought in

"a judicial district in which defendant resides, if all defendants are residents of the

State in which the district is located." 28 U.S.C. § 1391(b)(1). Under 28 U.S.C. §

1  1391(c)(2), a corporation "shall be deemed to reside, if a defendant, in any judicial

2  district in which such defendant is subject to the court's personal jurisdiction with

3  respect to the civil action in question."  28 U.S.C. § 1391(c)(2); *see also Zippo*,

4  952 F. Supp. at 1128 (finding that venue was proper over the corporate defendant

5  Dot Com due to the court's previous finding of personal jurisdiction).  Therefore,

6  venue of AlarmSIM in Washington would be proper because it is a corporation and

7  thus resides where there is personal jurisdiction, meaning the Eastern District of

8  Washington.  Yet, unlike *Zippo*, AlarmSIM is not the only defendant and Guthrie

9  Jr. does not reside in Washington.

10      Venue is still proper over both Defendants in Washington under 28 U.S.C.

11  § 1391(b)(2).  Venue is proper where "a substantial part of the events or omissions

12  giving rise to the claim occurred, or a substantial part of property that is the subject

13  of the action is situated."  28 U.S.C. § 1391(b)(2).  Defendants contend that

14  Plaintiff failed to allege a single specific occurrence in Washington that gave rise

15  to the claim.  ECF No. 17 at 15.  Yet, the Court disagrees and finds that Plaintiff

16  sufficiently alleged that 4% of AlarmSIM's gross sales were products sold to

17  Washington residents.  AlarmSIM marketed with allegedly false material and

18  infringing products to 126 Washington residents.  ECF No. 34 at 18.  These

19  occurrences in Washington are sufficient to establish venue over AlarmSIM and

20  Guthrie Jr. as the owner and cofounder of AlarmSIM.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant AlarmSIM's Motion to Dismiss (ECF No. 17) is **DENIED**.

2. Defendant Guthrie Jr.'s Motion to Dismiss (ECF No. 18) is **DENIED**.

3. Defendant Ramirez's Motion to Dismiss (ECF No. 19) is **GRANTED**.

4. Defendant Guthrie Sr.'s Motion to Dismiss (ECF No. 20) is **GRANTED**.

The District Court Executive is directed to enter this Order, furnish copies to counsel, and terminate Defendants Ramirez and Gutherie Sr. from this matter.

**DATED** November 29, 2017.



THOMAS O. RICE
Chief United States District Judge