UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

FORTRESS SECURE SOLUTIONS,
LLC, a Washington Limited Liability
Company,

                         Plaintiff,

        v.

ALARMSIM, LLC, et al.,

                         Defendants.

NO. 4:17-CV-5058-TOR

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT FOR FAILURE TO
STATE A CLAIM

        BEFORE THE COURT is Defendants' Motion to Dismiss Plaintiff's

Complaint for Failure to State a Claim. ECF No. 55. This matter was submitted

for consideration without oral argument. The Court has reviewed the record and

files herein, and is fully informed. For the reasons discussed below, Defendants'

Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim (ECF No. 55)

is **GRANTED**. Plaintiff's Amended Complaint (ECF No. 51) is **DISMISSED**

**with leave to amend**.

# BACKGROUND

On April 28, 2017, Plaintiff Fortress Secure Solutions, LLC ("Fortress") filed a Complaint alleging false designation of origin, dilution, intentional and/or negligent misrepresentation, breach of agreement, violations of RCW 19.86 *et seq.*, and civil conspiracy. ECF No. 1 at ¶¶ 27–61. On August 18, 2017, each Defendant filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). ECF Nos. 17; 18; 19; 20. The Court denied Defendant AlarmSIM, LLC ("AlarmSIM") and Defendant Ricky Guthrie Jr.'s Motions to Dismiss. ECF No. 46. The Court granted Defendant Ricky D. Guthrie Sr. and Defendant Eduardo Ramirez's Motions to Dismiss, terminating these defendants from the matter. *Id.*

On January 8, 2018, Plaintiff filed an Amended Complaint, alleging false designation of origin, dilution, intentional and/or negligent misrepresentation, breach of agreement, violations of RCW 19.86 *et seq.*, civil conspiracy, tortious interference with contractual relationships/business expectancy, and alter ego/piercing liability. ECF No. 51 at 9-15.

On January 23, 2018, Defendants AlarmSIM and Guthrie Jr. filed the instant Motion to Dismiss for Failure to State a Claim. ECF No. 55. Plaintiff filed a Memorandum in Opposition to Motion to Dismiss, asserting that it no longer intended to pursue the false designation of origin claim, dilution claim, violations

of RCW 19.86 *et seq.*, and civil conspiracy. ECF No. 58 at 6-7. Plaintiff then filed a stipulated Motion for Leave to File Amended Opposition, which the Court granted. ECF Nos. 59; 60. On March 5, 2015, Plaintiff filed its Amended Opposition to Motion to Dismiss, stating that it does not intend on continuing to pursue its civil conspiracy claim but is pursuing the rest of its claims. ECF No. 61 at 7.

## FACTS

The following facts are drawn from Plaintiff's Amended Complaint and are accepted as true for the purposes of the instant motion. Fortress is a Washington limited liability company that owns and operates a retail, internet-based home security alarm business. ECF No. 51 at ¶¶ 1, 10. AlarmSIM is a North Carolina limited liability corporation organized in 2014 and administratively dissolved in 2016. *Id.* at ¶ 2. It was a retail, internet-based SIM card and home security alarm business. *Id.* at ¶ 13. AlarmSIM sold their products on certain websites, which resulted in at least 126 sales to residents of Washington State. *Id.* at ¶ 14. Defendant Guthrie Jr. is an officer, member, and control person of AlarmSIM. *Id.* at ¶ 3. Guthrie Jr. owned a 40% membership interest in AlarmSIM and did business as AlarmSIM from 2012 until its dissolution. *Id.*

On or about November 11, 2013, Fortress claims that Guthrie Jr. contacted Fortress's President Michael Hofeditz regarding the compatibility of its SIM cards

with Fortress's security system.  *Id.* at ¶ 15.  Hofeditz explained to Guthrie Jr. that Fortress was a Washington based business and was concerned for its customers in Washington and throughout the country.  *Id.*  Guthrie Jr. indicated AlarmSIM offered top notch customer service and would take good care of Fortress's customers should it recommend AlarmSIM SIM cards to its customers.  *Id.* Guthrie Jr. then reached out by email on November 12, 2013, offering Fortress a "partnership" where AlarmSIM would supply Fortress with white label SIM cards which would be purchased and reloaded on Fortress's website.  *Id.* at ¶ 16.

Fortress did not elect to purchase the white label products, but agreed to advertise and promote the SIM card to its customers to be used in conjunction with Fortress security systems.  *Id.* at ¶¶ 17-18.  Fortress contends that AlarmSIM then gained access to Fortress's customers' addresses and contact information, which included over 100 residents of Washington State.  *Id.* at ¶¶ 19, 21.  Fortress states that Fortress customers constituted over 75% of AlarmSIM's business during 2014 and 2015.  *Id.* at ¶ 21.  Fortress asserts that AlarmSIM also obtained technical information concerning its security systems.  *Id.* at ¶ 19.

In December 2015, AlarmSIM sent an email to all Fortress's customers who had purchased its SIM cards.  *Id.* at ¶ 22.  This email told customers that there was a serious risk to the proper functioning of their security systems and Fortress was

slow or absent in its response.[1]  *Id.*  AlarmSIM announced that it had decided to introduce its own 3G security panel, comparing its panel to what is currently on the market as "what a computer is to a calculator."  *Id.*  AlarmSIM also offered a live chat as part of its marketing campaign.  *Id.* at ¶ 23.  Fortress contacted the live chat line, which stated that the system is "specifically designed to replace the Fortress systems."  *Id.*  Fortress claims that it received numerous communications from customers seeking assurance that Fortress's security systems were functional, causing Fortress to devote substantial staff resources to address these issues.  *Id.* at ¶ 24.  Fortress contends that AlarmSIM sent a copy of its December 2015 email to at least 80 of Fortress's customers who resided in Washington.  *Id.* at ¶ 26.

On December 23, 2015, AlarmSIM contacted Fortress and attempted to obtain a sample of one of Fortress's "newer units" under the guise that examining the unit would be helpful to resolve issues for individuals that AlarmSIM and Fortress "share as customers."  *Id.* at ¶ 25.

Fortress also claims that it received numerous complaints from customers concerning the products and services provided by AlarmSIM, including

---

[1]     The Court noted in a prior order that the email states "existing companies" were slow or absent in their response and does not mention Fortress by name.  ECF Nos. 46 at 5; 36-1 at 9 (Ex. C).

AlarmSIM's customer service. *Id.* at ¶ 27. Fortress asserts that many customers complained that they were unable to reach anyone at AlarmSIM's apparently non-existent call center or receive any response to their emails. *Id.* Plaintiff insists that this lack of response was directly contrary to the promises made by Guthrie Jr. and forced Fortress to incur considerable expense addressing problems with the AlarmSIM SIM cards. *Id.* Fortress states that it had to provide customer support for AlarmSIM in order to keep Fortress's customers' security systems functioning. *Id.* When AlarmSIM did respond to customer complaints, it attempted to conceal its failings by allegedly falsely and slanderously suggesting to Fortress customers that AlarmSIM SIM cards would not function properly as Fortress's security systems were "cheap" and contained "dated firmware and capacities." *Id.* at ¶ 28.

Fortress alleges that it suffered loss of business, lost profits, loss of business reputation, and other like and serious harm. *Id.* at ¶ 29. It was also forced to incur substantial expenses in responding to customer concerns and developing its own SIM card for its security systems. *Id.* at ¶¶ 30, 33. Plaintiff also alleges that Defendants began to advertise and sell security systems in 2016 that are identical in both design and trade dress to the Fortress Total Security Basic Model, attaching a picture of the alleged trade dress and Defendants' product. *Id.* at ¶¶ 31-32.

//

//

# DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires the plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. When deciding, the court may consider the plaintiff's allegations and any "materials incorporated into the complaint by reference." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). A plaintiff's "allegations of material fact are taken as true and construed in the light most favorable to the plaintiff[,]" but "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation and brackets omitted).

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a party's pleading "should [be] freely give[n] . . . when justice so requires," because the purpose of the rule is "to facilitate decision on the merits, rather than on the

pleadings or technicalities." *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (citation omitted). "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). Here, Plaintiff requests leave to amend. ECF No. 61 at 19.

Defendants seek to dismiss all of Plaintiff's claims. ECF No. 51. Plaintiff no longer intends to pursue the civil conspiracy claim. ECF No. 61 at 7. Therefore, the Court does not consider this claim and addresses the remaining causes of action below in the order briefed by Defendants.

## I.      Federal Law Claims

## A.      First Cause of Action:  False Designation of Origin

Plaintiff alleges that it is the owners of the trade dress embodied in the Fortress Total Security Basic Model, defining the trade dress with a picture of the product. ECF No. 51 at ¶¶ 31, 35. Plaintiff asserts that Defendants' unauthorized use in interstate commerce of the trade dress constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A). *Id.* at ¶ 41.

The Lanham Act imposes civil liability on "[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce … any false designation of origin" that "is likely to cause confusion, or

to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." Lanham Act, § 43(a) (codified at 15 U.S.C. § 1125(a)(1)(A)). Under § 43(a) of the Lanham Act, "the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (Stevens, J., concurring).

To recover under the Lanham Act for infringement of trade dress, a plaintiff must prove: (1) the trade dress features at issue are nonfunctional; (2) the trade dress is inherently distinctive or has acquired distinctiveness through secondary meaning; and (3) consumers are likely to confuse the plaintiff's product with the defendant's accused device. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001) (citing *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1005 (9th Cir. 1998)). When a trade dress is not registered on the principal register, the person who asserts trade dress protection has the burden of proving the matter sought to be protected is not functional. 15 U.S.C. § 1125(a)(3). In determining functionality, the Court examines the trade dress as a whole, bearing in mind that "[t]rade dress is the composite tapestry of visual effects." *Clicks Billiards*, 251 F.3d at 1259.

As an initial matter, Defendants contend that Plaintiff's pleading fails to identify a single aspect of its trade dress beyond the picture, and thus Plaintiff's first cause of action is inadequately pled. ECF No. 55 at 4-5. Defendants state that a court and the parties can only coherently define the trade dress, determine its validity, and find possible infringement when a list of specific elements of the trade dress is produced. *Id.* at 4; *Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp.*, 80 F. Supp. 2d 815, 889 (N.D. Ill. 1999) (quoting 2 McCarthy on Trademarks and Unfair Competition, § 8.3 (2nd ed. 1984)). Defendants note that imprecision and vagueness is unfair to the party accused of infringement. ECF No. 55 at 4; *Planet Hollywood*, 80 F. Supp. 2d at 890 (N.D. Ill. 1999) (quoting 2 McCarthy on Trademarks and Unfair Competition, § 8.3 (2nd ed. 1984)).

Plaintiff insists that the requirement that a trade dress be discrete and identifiable does not preclude a plaintiff from claiming the overall look or design of the product as protected. ECF No. 61 at 9. Plaintiff argues that Defendants have copied virtually every detail of its trade dress in order to create a near replica, which is readily ascertainable by the description and photographs found in the Amended Complaint. *Id.* at 9-10. Plaintiff indicates it is willing to file a second amended complaint, setting forth the discrete elements which made up the subject combination in a list form to alleviate Defendants' concerns. *Id.* at 10 n. 5.

McCarthy on Trademarks and Unfair Competition states that images are not sufficient to identify a trade dress and "[i]f plaintiff fails to properly articulate the elements of its trade dress, the court can dismiss on a Rule 12(b)(6) motion." 1 McCarthy on Trademarks and Unfair Competition § 8:3 (5th ed. 2018) (hereinafter "McCarthy at § 8:3") (citing *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 310 (3d Cir. 2014)). Additionally, the Eastern District of California notes that "[c]ourts elsewhere also have required a claimant to do more than just point to the 'overall look'; it must 'articulat[e] the specific elements which comprise its distinct dress.'" *EZ Pedo, Inc. v. Mayclin Dental Studio, Inc.*, No. 216-CV-00731-KJM-CKD, 2018 WL 934552, at *5 (E.D. Cal. Feb. 15, 2018) (quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2nd Cir. 1997); *see also Fair Wind Sailing*, 764 F.3d at 306; *Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 415 (6th Cir. 2006); McCarthy at § 8.3).

Here, the Court finds that Plaintiff fails to properly identify its trade dress and the image is insufficient for the Court to determine what parts constitute protectable trade dress. *See* McCarthy at § 8.3. The Court determines that the above citations are persuasive and invokes its discretion to dismiss Plaintiff's trade dress claim. This Court finds that Plaintiff may file a second amended complaint setting forth the specific elements which comprise its trade dress. The Court need not address Defendants' remaining arguments regarding functionality,

distinctiveness, and confusion.  *See* ECF No. 55 at 5-8.  The Court considers

Defendants' argument regarding third-party products below.  *See id.* at 6-8.

Accordingly, Plaintiff's claim for false designation of origin is dismissed with

leave to amend.

**B.     Second Cause of Action:  Dilution**

Plaintiff next alleges dilution of the distinctive qualities of its trade dress in

violation of 15 U.S.C. § 1125(c).  ECF No. 51 at ¶ 49.  To assert a claim for

dilution under the Trademark Dilution Revision Act of 2006 ("TDRA"), a plaintiff

must prove:  (1) the mark is famous and distinctive; (2) defendant is making use of

the mark in commerce; (3) defendant's use began after the mark became famous;

and (4) defendant's use is likely to cause dilution by blurring or dilution by

tarnishment.[2]  *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008)

(citations omitted).

---

[2]     The Court notes that Defendants incorrectly cite to the Federal Trademark

Dilution Act ("FTDA"), which was amended and replaced by the TDRA in 2006.

*See* ECF No. 55 at 9; *Jada*, 518 F.3d at 634 n.2; *Levi Strauss & Co. v.

*Abercrombie & Fitch Trading Co.*, 633 F.3d 1158, 1165-66 (9th Cir. 2011).

Plaintiff also cites to *Than Int'l, Inc. v. Trek Bicycle Corp.*, which was superseded

and decided prior to the TDRA.  *See* ECF No. 61 at 10; *Than Int'l, Inc. v. Trek*

Defendants focus their arguments on the first factor of fame and distinction, and the Court will only consider these elements. ECF No. 55 at 9-10. A mark is famous "if it widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). Relevant factors include: (1) duration, extent, and geographic reach of advertising and publicity of the mark; (2) amount, volume, and geographic extent of sale of goods or services; (3) extent of actual recognition of the mark; and (4) whether the mark was registered. 15 U.S.C. § 1125(c)(2)(A)(i)-(iv). In regards to distinction, the mark used by the alleged diluter does not have to be identical nor nearly identical. The plaintiff must show merely that the "junior mark is likely to impair the distinctiveness of the famous mark." *Levis Strauss & Co.*, 633 F.3d at 1169-72.

Defendants argue that Plaintiff's trade dress is not distinctive. ECF No. 55 at 9. Defendants concede that similarities between their products are apparent, but

_____

*Bicycle Corp.*, 305 F.3d 894 (9th Cir. 2002), *superseded by statute JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098 (9th Cir. 2016). Under the current TDRA, only a likelihood of dilution is required to succeed, rather than a showing of actual dilution as required under the FTDA. *Jada*, 518 F.3d at 634 n.2; *Levi Strauss*, 633 F.3d at 1165-66.

assert that Plaintiff's products are also indistinguishable from those of third-party Kerui. *Id.* at 5-7. Plaintiff rejects Defendants' comparison to the Kerui products and states that under a Rule 12(b)(6) motion, a court should not consider material outside the four corners of the complaint unless such material is subject to judicial notice and a formal request for judicial notice is made. ECF No. 61 at 10; *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001). Plaintiff insists that Defendants reference to the Kerui products are impermissible at this stage and should be stricken. ECF No. 61 at 11.

Defendants respond that the Court may take notice of facts outside the four corners of the Complaint and convert Defendants' Motion to Dismiss to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. ECF No. 62 at 4. Defendants cite, "If, on a motion under Civil Rule 12(b)(6), matters outside the pleadings are presented to and *not excluded by the court*, the motion must be treated as one for summary judgment under Civil Rule 56." *Id.*

A district court has discretion whether to convert a motion to dismiss into one for summary judgment. *See Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007). At this stage of the proceeding, the Court declines to consider matters outside the pleadings and excludes information provided by Defendants regarding the Kerui products. Therefore, the Court only considers the facts as alleged in Plaintiff's Amended Complaint.

In considering the distinction factor without the third-party product comparison, the Court finds that Plaintiff still fails to assert a plausible claim for relief under dilution. Plaintiff alleges that its trade dress "has acquired distinctiveness because it has come to be recognized as a source indicator by the consuming public, who associate the Trade Dress with Fortress's security systems." *Id.* at ¶ 36. Plaintiff also insists that its trade dress is famous in the area of home security systems. *Id.* at ¶ 46. The Court has already determined that the visual depiction is insufficient to establish a trade dress. *See* ECF No. 51 at ¶ 31. Plaintiff fails to address any other facts or arguments as to how its alleged trade dress is distinctive or famous. While the Court takes Plaintiff's allegations of fact as true, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Stac Elecs. Sec. Litig.*, 89 F.3d at 1403. The Court does not find that Plaintiff's bare assertion of fame is sufficient to overcome a motion to dismiss. Plaintiff fails to assert any facts as to how its alleged trade dress is famous, and it does not address any of the relevant factors outlined above. *See* 15 U.S.C. § 1125(c)(2)(A)(i)-(iv). Without more than a visual depiction of the alleged trade dress and a mere formulaic assertion of fame and distinction, the Court cannot find that Plaintiff plausibly states a dilution claim. Accordingly, the Court dismisses Plaintiff's claim for dilution with leave to amend, as it fails to allege sufficient factual matter to state a

claim for relief that is plausible on its face. *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## II.     State Law Claims

Defendants request that if the Court dismisses the only federal claims of false designation of origin and dilution, then the case should be dismissed in full to be refiled in the proper jurisdiction. ECF No. 55 at 10. Plaintiff pleads federal question jurisdiction and diversity jurisdiction. ECF No. 51 at ¶ 4. While a federal question no longer exists, diversity jurisdiction still applies. Yet, Plaintiff failed to plead an amount in controversy that exceeds $75,000. *Id.* at ¶ 4; *see* 28 U.S.C. § 1332. Therefore, the Court dismisses Plaintiff's state law claims with leave to amend so that Plaintiff may properly assert diversity jurisdiction. Because they are subject to amendment, the Court substantively addresses each of Plaintiff's state law claims below.

### A. Fourth Cause of Action:  Breach of Agreement

Plaintiff alleges breach of agreement where AlarmSIM agreed to provide Fortress's customers state of the art products and effective customer service in consideration for Fortress recommending AlarmSIM's SIM cards to its customer. ECF No. 51 at ¶ 57. A claim for breach of contract is actionable under Washington law "if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *Nw. Indep. Forest Mfrs. v.*

*Dep't of Labor & Indus.*, 78 Wash. App. 707, 712 (1995) (citation omitted). As an initial matter, a valid contract or agreement must exist.

Here, Defendant asserts that Plaintiff merely offers a single email from November 12, 2013 as proof of an agreement. ECF No. 55 at 10. The email is an outline of two proposed partnership agreements sent from RJ to Michael Hofeditz, Plaintiff's President and Chief Executive Officer at the time of the email. *Id.* at 10-11. Defendants note that the email was sent to Mr. Hofeditz's Hotmail account, rather than any official Fortress email address. *Id.* at 11. Defendants explain that the email offered two partnership arrangements whereby Plaintiff would act as a reseller of Defendants' products. *Id.* Plaintiff admits that it declined the first arrangement, but does not discuss the second. ECF Nos. 55 at 12; 51 at ¶ 17. Defendants state that Plaintiff never paid any sum of money to Defendants pursuant to either partnership agreement. ECF No. 55 at 12. Defendants contend that the email did not ask Plaintiff to advertise, promote, or recommend AlarmSIM's products to Plaintiff's customers, contrary to Plaintiff's assertion that it agreed to extensively advertise and promote the products. *Id.*; 51 at ¶ 18. Plaintiff did not respond with such an offer to advertise, promote, or recommend Defendants' products. ECF No. 55 at 12. Defendants assert that Plaintiff fails to plausibly allege the existence of a valid agreement and it is thus impossible that Defendants might be in breach of an agreement with Plaintiff. *Id.*

Plaintiff contends that in exchange for Defendants' promise to supply state of the art SIM cards that were suitable for use with Fortress's alarm systems and provide quality customer service to Fortress's customers, Fortress would advertise and promote the use of AlarmSIM's SIM card to its customers. ECF No. 61 at 12-13. Plaintiff then argues that Fortress and Defendants exchanged a promise of performance for a promise of performance. *Id.* at 13. Plaintiff states that in furtherance of this agreement, it referred hundreds of customers to AlarmSIM, which included over 100 residents of Washington State. *Id.* at 11. Plaintiff alleges that its customers constituted over 75% of AlarmSIM's business during these years. *Id.* Plaintiff insists that as a result of Guthrie Jr.'s allegedly false representations, Plaintiff was forced to incur significant expense in addressing the problems with AlarmSIM's SIM cards and provide the customer service that Defendants promised to provide. *Id.* at 12. Plaintiff argues that consideration existed as Defendants made the above promises in order to obtain a promise in return from Fortress to advertise and promote Defendants' SIM cards to its customers, which is a bargained for exchange. *Id.* at 13.

Defendants note that Plaintiff merely alleges that Guthrie Jr. *"indicated that AlarmSIM offered top notch customer service and would take good care of Fortress' customers if Fortress would recommend AlarmSIM SIM cards to its customers."* ECF Nos. 62 at 5; 51 at ¶ 15. Defendants insist that an indication is

not an offer to contract. ECF No. 62 at 5. Defendants emphasize that Plaintiff turned down Defendant AlarmSIM's actual offer to contract in the form of two partnership agreements. ECF Nos. 61 at 5; 51 at ¶ 17. Defendants contend that Plaintiff's alleged agreement with AlarmSIM was at most an offer by Plaintiff to Defendants to enter into a unilateral contract where AlarmSIM would be required to perform its obligations before Plaintiff's counter-obligations came due. ECF No. 62 at 6. Defendants argue that an offeree is under no obligation to accept an offer to enter into a unilateral contract. *Id.* At most, Plaintiff's may have extended an offer for a unilateral agreement, Plaintiff began performing its reciprocal obligations, and Defendant AlarmSIM never performed its own obligations thus Defendant never entered into the agreement. *Id.* at 6-7.

The Court does not address Defendants' remaining arguments (*see* ECF No. 62 at 7-9), finding that Plaintiff fails to properly plead a claim for breach of agreement. Plaintiff's Amended Complaint consists of a mere formulaic recitation of the elements. ECF No. 51 at ¶¶ 56-60; *see Twombly*, 550 U.S. at 555. Plaintiff fails to allege sufficient factual matter to show that a valid agreement exists. Plaintiff contends that consideration existed because Fortress recommended AlarmSIM's SIM cards to its customers and, in return, "AlarmSIM agreed to provide Fortress's customers state of the art and properly functioning products, and prompt, courteous and effective customer service." ECF No. 51 at ¶ 57. Yet,

Plaintiff's assertion of consideration and an agreement without further factual

showings is insufficient. Plaintiff's allegation that Guthrie Jr. "indicated"

AlarmSIM offered top notch service and would take care of Fortress's customers is

not sufficient to establish a valid agreement. *Id.* at ¶ 15. This indication is

especially not persuasive where Plaintiff rejected Defendants' offer to contract. *Id.*

at ¶ 17. Plaintiff's unwarranted inference that consideration and a valid agreement

exists cannot withstand Defendants' Motion to Dismiss where Plaintiff does not go

beyond a mere formulaic recitation of the contract elements. Accordingly, the

Court dismisses Plaintiff's breach of agreement claim with leave to amend.

**B. Third Cause of Action: Intentional and/or Negligent Misrepresentation**

Plaintiff alleges in its third cause of action intentional and/or negligent

misrepresentation. *Id.* at ¶¶ 51-55. To state a claim for fraud or intentional

misrepresentation under Washington law, a plaintiff must plead the following

elements: 1) representation of an existing fact; 2) materiality; 3) falsity; 4) the

speaker's knowledge of its falsity; 5) intent of the speaker that it should be acted

upon by the plaintiff; 6) the plaintiff's ignorance of its falsity; 7) the plaintiff's

reliance on the truth of the representations; 8) the plaintiff's right to rely upon it;

and 9) damages suffered by the plaintiff. *Stiley v. Block*, 130 Wash.2d 486, 505

(1996).

Under a claim for negligent misrepresentation, a plaintiff "must prove by clear, cogent, and convincing evidence that":  1) defendants supplied false information for the guidance of others in their business transactions; (2) defendants knew or should have known that the information was supplied to guide the plaintiff in his business transactions; 3) defendants were negligent in obtaining or communicating the false information; 4) the plaintiff relied on the false information; 5) the plaintiff's reliance was reasonable; and 6) the false information proximately caused the plaintiff's damages. *Ross v. Kirner*, 162 Wash.2d 493, 499 (2007).

Here, Defendants asserts that Plaintiff does not identify the misrepresentations or false representations that it believes Defendants made.  ECF No. 55 at 13.  Defendants also contend that there is no evidence of any type of business negotiation besides the email on November 12, 2013.  *Id.* at 14. Defendants argues that this is an email outlining two proposed partnership arrangements, not a provision of "facts" that might be misrepresented.  *Id.* Defendants further insist that no statement in the email was false and reliance on the terms of an agreement that Plaintiff did not accept nor pay for is clearly unreasonable.  *Id.*

Plaintiff contends that Guthrie Jr. made false representations in connection with the capacities and suitability of AlarmSIM's SIM cards and AlarmSIM's

ability and willingness to provide top notch customer service to Fortress's customers, inducing Plaintiff to enter into a business relationship with AlarmSIM. ECF No. 61 at 14. Plaintiff states that it specifically alleges in the Amended Complaint the false misrepresentations, the identity of the person who made these misrepresentations, the date, and a recitation of what was said. *Id.* Plaintiff emphasizes that it reasonably relied on these misrepresentations and would not have entered into a business relationship with Defendants but for these misrepresentations. *Id.*

Defendants again note that Plaintiff's Amended Complaint merely states that "Guthrie Jr. *indicated* that AlarmSIM offered top notch customer service …." ECF Nos. 62 at 10; 51 at ¶ 15 (emphasis added). Defendants assert that an indication is not a representation, arguing that Plaintiff's statement that its Amended Complaint specifically alleged the misrepresentations, date, and recitation of what was said is untrue. ECF No. 62 at 10. Defendants insist that indications are not statements or representations and Plaintiff has not identified a single untrue statement made by Defendants. *Id.* Defendants state that they nor the Court can determine the truth or falsity of an indication without Plaintiff actually explaining what Defendants said or did. *Id.* at 11. Additionally, Defendants emphasize that any statements allegedly made by Defendants did not induce Plaintiff to enter into a business relationship because Plaintiff did not accept

either of the partnership agreements. *Id.* at 10.

The Court determines that Plaintiff fails to sufficiently plead a claim for intentional or negligent misrepresentation. Plaintiff merely alleges that Defendants' made misrepresentations, knew or should have known that the representations were false, made the misrepresentations purposefully to induce Fortress to enter into a business relationship, and the misrepresentations were material and Fortress reasonably relied on these misrepresentations to its detriment. ECF No. 51 at ¶¶ 52-54. While Plaintiff repleaded and incorporated its other allegations, Plaintiff still fails to go beyond a mere formulaic recitation of the elements. *Id.* at ¶ 51. Plaintiff does not allege sufficient facts to show that Guthrie Jr. knew his statements were false regarding customer service to be delivered in the future or that Plaintiff had a right to rely on these statements after it rejected the proposed partnership agreements. Plaintiff also fails to establish facts showing that a business relationship existed. Plaintiff does not address how it can reasonably rely on Defendants' alleged statements after rejecting a business relationship with Defendants. The Court determines that Plaintiffs failed to properly plead a claim for misrepresentation with these unwarranted inferences regarding Defendants' conduct. Accordingly, the Court dismisses Plaintiff's intentional and negligent misrepresentation claims with leave to amend.

**C. Seventh Cause of Action:  Tortious Interference with Contractual Relationships/Business Expectancy**

Plaintiff alleges tortious interference with contractual relationships/business expectancy.  ECF No. 51 ¶¶ 69-73.  To prevail on its tortious interference claim, Plaintiff must show:  (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damages.  *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc.*, 114 Wash. App. 151, 157-58 (2002).  A valid business expectancy "includes any prospective contractual or business relationship that would be of pecuniary value."  *Id.* at 158.  Intentional interference "denotes purposefully improper interference."  *Birkenwald Distrib. Co. v. Heublein, Inc.*, 55 Wash. App. 1, 11 (1989) ("When one acts to promote lawful economic interests, *bad motive* is essential, and incidental interference will not suffice.") (citations omitted and emphasis added).

In regards to the first and second elements, Plaintiff asserts that Defendants knew Fortress had a valid business relationship and a legitimate expectancy of future business with its customer base.  ECF No. 51 at ¶ 70.  Defendants argue that while Plaintiff and Defendant AlarmSIM did share an overlapping customer base,

this does not lead to the conclusion that Defendants knew which customers were also purchasers of Plaintiff's products. ECF No. 55 at 15. Defendants assert that they could not have known which customers were in a business relationship with Plaintiff, and thus they had no way of having knowledge of these relationships. *Id.*

Plaintiff responds that Defendants knew about these relationships because they used information obtained from Fortress to contact its customers and claimed in their Live Chat that their product was "specifically designed to replace the Fortress systems." ECF No. 61 at 15. Plaintiff emphasizes that Defendants obtained approximately 75% of their customers from Fortress and thus Defendants' claim that they did not know they were contacting Fortress's customers "is frankly ridiculous." *Id.* at 16.

In regards to the third element, Plaintiff alleges that Defendants intentionally, willfully, and purposely induced Fortress's customers to terminate their business relationship with Fortress. ECF No. 51 at ¶ 71. Defendants assert that its December 4, 2015 email sent to its customers makes no mention of Plaintiff. ECF No. 55 at 16. Defendants emphasize that while the parties shared some of the same customers due to their complimentary products, this does not support a finding of intent. *Id.* Defendants argue that they could not have known which customers in receipt of the email were also in a business relationship with Plaintiff, meaning Defendants did not intend to cause a breach or termination of

any contract, relationship, or expectancy that Plaintiff then possessed.  *Id.*
Defendants highlight that the email was sent to sell their own products, not to
disrupt another's business relationships.  *Id.*

Under the fourth element, Defendants assert that their "interference" was not
for an improper purpose or through improper means.  *Id.*  Defendant AlarmSIM
sent an email to a distribution list of past and current customers and there was
nothing dubious about this means of solicitation.  *Id.*  Defendants insist there was
no improper purpose motivating their behavior, but the email was for the purpose
of selling its own products and nothing else.  *Id.*

Plaintiff contends that Defendants falsely represented in its December 4,
2015 email that its security alarm panels were obsolete, that Fortress had been
either slow or absent in addressing customer concerns, and that there was a serious
risk to the proper functioning of the security systems.  ECF No. 61 at 16.  Plaintiff
also notes that Defendants falsely represented that they had designed a new
revolutionary security panel to what was currently on the market "what a computer
is to a calculator."  *Id.*  Plaintiff argues that these false representations clearly
constitute improper means.  *Id.*  Defendants respond that the "computer to
calculator" analogy did not make mention of or target Plaintiff in any way.  ECF
No. 62 at 12.  Defendants insist that their desire to induce customers to leave their
current alarm providers and utilize their own alarm services is not an "improper

use," but merely competition in the marketplace.  *Id.*

The Court finds that Plaintiff fails to properly plead a claim for tortious interference.  Plaintiff merely asserts that Defendants knew that Fortress had a valid business relationship; Defendants intentionally, willfully, and purposefully inducted Fortress's customers to terminate their business relationship with Fortress; and Defendants' interference was done for their financial gain and for an improper purpose and through improper means.  ECF No. 51 at ¶¶ 70-71.  This mere recitation of the elements of a tortious interference claim cannot overcome a motion to dismiss.

Additionally, Plaintiff incorrectly and misleadingly adds to its quotation of Defendants' December 4, 2015 email, stating:  "SERIOUS RISK TO THE PROPER FUNCTION OF (Fortress's customer's) SECURITY SYSTEMS."  *Id.* at ¶ 22.  Yet, the actual quotation states, "THIS IS A SERIOUS RISK TO THE PROPER FUNCTION OF YOUR SECURITY SYSTEM."  ECF No. 36-1 at 9.  Defendants are correct that this email does not mention Fortress, contrary to Plaintiff's assertions.  While Plaintiff argues that AlarmSIM purposefully implied Fortress was not attending to its customers' needs, this alleged implication is an unwarranted inference without sufficient facts.  Plaintiff fails to sufficiently plead that Defendants' conduct goes beyond mere competition in the marketplace.  Plaintiff's live chat citation that AlarmSIM's system was designed to replace the

1   Fortress's system is persuasive, but standing alone it is insufficient to establish all

2   the elements of tortious interference.

3           Plaintiff does not plead sufficient factual matter that Defendants knew about

4   Plaintiff's business expectancy and that Defendants intentionally interfered for an

5   improper purpose or used improper means.  Without more than incorrect citations

6   and a mere recitation of the elements, Plaintiff fails to properly plead a claim for

7   tortious interference with contractual relationships/business expectancy.

8   Accordingly, the Court dismisses Plaintiff's tortious interference claim with leave

9   to amend.

10      **D. Fifth Cause of Action:  Violations of RCW 19.86 *et seq.***

11          Plaintiff asserts that Defendants' conduct constitutes unfair and deceptive

12  business practices under the Washington Consumer Protection Act, RCW 19.86 *et*

13  *seq.*  ECF No. 51 at ¶¶ 61-64.  The CPA prohibits unfair competition and deceptive

14  or unfair business practices in the conduct of any trade or commerce.  RCW

15  19.86.020.

16          Defendants assert that Plaintiff fails to point to any conduct that violated the

17  state statute and thus Plaintiff fails to allege any unlawful conduct on the part of

18  Defendants.  ECF No. 55 at 17.  Defendants insist that Plaintiff's claims with

19  regards to its trade dress are wholly lacking in merit, citing its arguments discussed

20  above.  ECF No. 62 at 13.  Plaintiff rejects Defendants' contention and asserts that

it alleged in detail that Defendants purposely and unlawfully utilized Fortress's trade dress in a manner that is likely to cause confusion, mistake, and deceive consumers as to Defendants' affiliations with Fortress.  ECF No. 61 at 17.

The Court again finds that Plaintiff's claim for violations of RCW 19.86 *et seq.* is insufficiently plead.  Plaintiff fails to properly establish its trade dress, as discussed above.  Without a sufficiently established trade dress, the Court cannot determine whether Plaintiff sufficiently established unfair competition and deceptive or unfair business practices by showing that Defendants used and diluted Plaintiff's trade dress.  Plaintiff merely states that Defendants conduct was willful and intentional, constituting unfair and deceptive business practices.  ECF No. 51 at ¶ 62.  This mere formulaic recitation of the elements of a CPA claim cannot defeat a motion to dismiss without sufficient facts regarding the trade dress and Defendants purposeful and unlawful use of this trade dress.  Accordingly, the Court dismisses Plaintiff's claim for violation of RCW 19.86 *et seq.* with leave to amend.

**E. Eighth Cause of Action:  Alter Ego and/or Veil Piercing**

Lastly, Plaintiff contends that "Guthrie Jr. and AlarmSIM are alter egos, joint venturers, engaged in a single enterprise, and/or agents of one another and are therefore jointly and severally liable with one another for the damages incurred by Fortress."  ECF No. 51 at ¶ 77.

When subject matter jurisdiction is based on a federal question arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, federal common law controls as to whether to pierce the corporate veil.[3] *OTR Wheel Eng'g. Inc. v. W. Worldwide Servs., Inc.*, No. 2:14-CV-00085-LRS, 2014 WL 11514767, at *1 (E.D. Wash. Aug. 1, 2014). "[A]lter ego is a procedural mechanism to enforce an underlying claim and not an independent cause of action." *Five Points Hotel P'ship v. Pinsonneault*, 697 F. App'x 549, 550 (9th Cir. 2017) (citation omitted). "A claim based on the alter ego theory is not in itself a claim for substantive relief, but rather is procedural." *Id.* at 550 (quoting 1 Fletcher Cyclopedia of the Law of Private Corporations § 41.10 (Sept. 2016 update)). "A finding of fact of alter ego, standing alone, creates no cause of action. It merely furnishes a means for a complainant to reach a second corporation or individual upon a cause of action that otherwise would have existed only against the first corporation." 1 Fletcher Cyclopedia of the Law of Private Corporations § 41.10 (Sept. 2017 update). Alter

---

[3]     At this time, the Court disagrees with Plaintiff's contention that North Carolina law is applicable because Defendant AlarmSIM is a North Carolina LLC. ECF No. 61 at 17. Plaintiff offers no precedent as to why this Court should consider its alter ego claim under North Carolina law rather than federal common law. *See id.* at 17-18.

ego or veil piercing is then "a means of imposing liability on an underlying cause of action such as a tort or breach of contract." *Id.*

Therefore, the Court finds that Plaintiff's alter ego theory is not a separate claim and should not be considered in a motion to dismiss. Plaintiff's assertion of alter ego is merely meant to hold Guthrie Jr. liable alongside AlarmSIM and the theory is not a separate cause of action. The Court thus does not consider the parties' arguments regarding the merits of the theory. *See* ECF Nos. 55 at 18-19; 61 at 17-18; 62 at 13. The alter ego theory is not a separate claim but is based on the other dismissed causes of action, and the Court therefore dismisses the alter ego theory with leave to amend as there are no remaining underlying claims.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Defendants' Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim (ECF No. 55) is **GRANTED.** Plaintiff's Amended Complaint (ECF No. 51) is **DISMISSED with leave to amend**. Plaintiff may file a Second Amended Complaint within thirty (30) days of the date of this Order.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

**DATED** March 21, 2018.



THOMAS O. RICE
Chief United States District Judge